EXHIBIT 1

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting <u>data</u> pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

---

**I.     CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>SIXTEENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MONROE</u>   COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>MACE MARINE INC.</u>
 Plaintiff
              vs.
<u>TOKIO MARINE SPECIALTY INSURANCE COMPANY</u>
Defendant

---

**II.     AMOUNT OF CLAIM**

   Please indicate the estimated amount of the claim rounded to the nearest dollar $<u>50,000</u>

**III.     TYPE OF CASE**     (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
　☐ Business governance
　☐ Business torts
　☐ Environmental/Toxic tort
　☐ Third party indemnification
　☐ Construction defect
　☐ Mass tort
　☐ Negligent security
　☐ Nursing home negligence
　☐ Premises liability – commercial
　☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
　☐ Commercial foreclosure
　☐ Homestead residential foreclosure
　☐ Non-homestead residential foreclosure
　☐ Other real property actions
☐ Professional malpractice
　☐ Malpractice – business
　☐ Malpractice – medical

　☐ Malpractice – other professional
☒ Other
　☐ Antitrust/Trade Regulation
　☐ Business Transaction
　☐ Circuit Civil - Not Applicable
　☐ Constitutional challenge-statute or ordinance
　☐ Constitutional challenge-proposed amendment
　☐ Corporate Trusts
　☐ Discrimination-employment or other
　☒ Insurance claims
　☐ Intellectual property
　☐ Libel/Slander
　☐ Shareholder derivative action
　☐ Securities litigation
　☐ Trade secrets
　☐ Trust litigation

☐ County Civil
　☐ Small Claims up to $8,000
　☐ Civil
　☐ Replevins
　☐ Evictions
　☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒  Monetary;
☒  Non-monetary declaratory or injunctive relief;
☐  Punitive

**V.    NUMBER OF CAUSES OF ACTION:**
(Specify)

<u>3</u>

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
☐  Yes
☒  No

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
☒  No
☐  Yes – If "yes" list all related cases by name, case number and court:

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
☒  Yes
☐  No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature:   <u>s/ Eric Fischer</u>
Attorney or party
FL Bar No.:  <u>962422</u>
(Bar number, if attorney)
<u>Eric Fischer</u>
(Type or print name)
Date:  <u>04/06/2020</u>

**IN THE CIRCUIT COURT OF THE 16TH JUDICIAL CIRCUIT IN AND FOR MONROE COUNTY, FLORIDA**

MACE MARINE INC., d/b/a Conch Republic Divers,

                  Plaintiff,

v.

TOKIO MARINE SPECIALTY INSURANCE COMPANY,

                  Defendant.

Case No.

## SUMMONS IN A CIVIL ACTION

THE STATE OF FLORIDA:
To Each Sheriff of the State

        YOU ARE HEREBY commanded to serve this summons and a copy of the complaint in this action upon Defendant:

                TOKIO MARINE SPECIALTY INSURANCE COMPANY
                c/o Florida Chief Financial Officer as RA
                Service of Process Section
                PO Box 6200
                Tallahassee, FL   32314-6200

Defendant is required to serve written defenses to the complaint on Plaintiffs' attorney, to wit:

                Matthew D. Landau (Fla. Bar. No. 445967)
                THE LANDAU LAW GROUP, P.A.
                1200 North Federal Highway, Ste. 200
                Boca Raton, FL 33432
                Phone: (954) 964-0900
                matt@thelandaulawgroup.com

within 20 days after the date of service of this process on Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiffs' attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the complaint or petition.

DATED: _____

                        Clerk of the Court


                        _____(Court Seal)
                        By Deputy Clerk:

**IN THE CIRCUIT COURT OF THE 16TH JUDICIAL CIRCUIT IN AND FOR MONROE COUNTY, FLORIDA**

MACE MARINE INC., d/b/a Conch Republic Divers,

               Plaintiff,

v.

TOKIO MARINE SPECIALTY INSURANCE COMPANY

               Defendant.

Case No.

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff, MACE MARINE INC., by and through undersigned counsel, submit this Complaint against Defendant, TOKIO MARINE SPECIALTY INSURANCE COMPANY. As its Complaint, Plaintiff asserts and alleges as follows:

**Introduction**

1. This action arises from the denial of commercial insurance benefits. Plaintiff owns and operates a dive shop business located at 90800 Overseas Highway #9, in Tavernier, Monroe County, Florida. Plaintiff purchased and Defendant issued a commercial lines insurance policy numbered PPK1992912 (the "**Policy**") containing coverage for, amongst other things, business income, extra expense, ingress/egress and civil authority. A complete copy of the Policy is within Defendant's possession.

2. In late 2019 and early 2020, an outbreak of respiratory illness caused by a novel coronavirus n/k/a COVID-19 started to infect humans across the globe. On March 11, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a pandemic (i.e. a global outbreak of disease).

3.      Throughout the month of March 2020, governments around the world, including the U.S. Government, State of Florida and Monroe County began ordering the shutdown of non-essential businesses and ordering citizens to stay at home in order to slow the spread of COVID-19 and reduce the health and economic impact of the pandemic.

4.      After Plaintiff ceased operations and shut its business by order of the State of Florida and Monroe County, it made a claim with Defendant under the Policy's business income coverage (the "**Claim**").  Defendant acknowledged the Claim, assigned it claim number 1358908, and subsequently denied the Claim by letter dated March 30, 2020.  A copy of the denial letter is attached hereto as **Exhibit "A"**.

5.      Plaintiff therefore brings this action to obtain the benefits due under the Policy and to seek a declaratory judgment on relevant provisions of the Policy on which the parties are relying.

<u>**Parties and Jurisdiction**</u>

6.      Plaintiff is a Florida entity with its principal place of business in this County.

7.      Defendant is an insurance company with its principal place of business in the State of Pennsylvania.  Defendant has engaged in business in this County by issuing insurance policies and adjusting claims.

8.      The amount at issue in this case is in excess of $30,000.00, exclusive of interest, attorneys' fees and costs.

9.      Venue is proper in this Circuit because the conduct at issue occurred in this County and Defendant is present in this Circuit through its business activities.

2

**Factual Allegations**

10.     On March 1, 2020, Florida Governor Ron Desantis issued Executive Order Number 20-51, directing the State Health Officer and Surgeon General to declare a Public Health Emergency due to the discovery of COVID-19 in Florida.

11.     On March 13, 2020, Monroe County Administrator Roman Gastesi stated in a letter regarding the impact of COVID-19 that the County is "increasing the frequency of cleaning high-touch surfaces".

12.     On March 19, 2020, citing concerns for increasing danger to the Florida Keys from COVID-19, Monroe County officials announced it will close hotels, guest houses, short-term rentals in RV parks and vacation rentals beginning at 6 p.m. March 22.

13.     The pandemic has led to a restriction on international and domestic travel and closed borders.

14.     Monroe County and the Florida Keys are a popular destination for tourists and scuba diving enthusiasts attracting millions of visitors per year from around the country and around the world.

15.     On March 20, 2020, in an effort to limit the spread of and avoid infection from the disease, Monroe County issued Emergency Directive 20-02, which closed Monroe County to tourists and leisure visitors.

16.     The restriction on travel into and within Monroe County prevented the ingress to the insured property by customers on which Plaintiff relies for business income.

17.     Plaintiff's business of operating a dive shop is not deemed an essential service.

18.     On March 30, 2020, Florida Governor Ron DeSantis issued Executive Order Number 20-89 which ordered Monroe County to restrict public access to businesses and facilities deemed non-essential.

19.     On April 1, 2020, Florida Governor Ron DeSantis issued Executive Order Number 20-91 which ordered that all persons in Florida shall limit their movements and personal interactions outside of their home to only those necessary to obtain or provide essential services or conduct essential services. Said order is set to expire on April 30, 2020 unless extended by subsequent order.

20.     The Policy contains coverage for acts of civil authority.

21.     Civil authority actions precluded Plaintiff from operating its business.

22.     Per the Centers for Disease Control and Prevention ("**CDC**"), there is no vaccine to protect against COVID-19 and no medications approved to treat it.

23.     It may take up to 14 days for an infected person to have symptoms.

24.     A large percentage of persons who tested positive for COVID-19 showed no symptoms prior to testing. In fact, the director of the CDC, Dr. Robert Redfield, stated that "we have pretty much confirmed [now is] that a significant number of individuals that are infected actually remain asymptomatic. That may be as many as 25%. That's important, because now you have individuals that may not have any symptoms that can contribute to transmission, and we have learned that in fact they do contribute to transmission".

25.     The WHO states that COVID-19 can spread from person to person when a person with COVID-19 contaminates objects and surfaces, and other people touch these objects or surfaces and then touch their eyes, nose or mouth.

26.     The CDC states that COVID-19 may remain viable for hours to days on surfaces and recommends the routine cleaning of all frequently touched surfaces and disinfection-level deep cleaning of surfaces thought to be contaminated.

27.     The infectious particles of COVID-19 are invisible to the naked eye and it is not feasible to test every surface to determine if it has been contaminated. A surface that is touched by a person infected with COVID-19 is presumed to be contaminated.

28.     Accordingly, the presence or danger of COVID-19 on property renders that property unusable and non-functioning until such time as the property is sanitized.

29.     After a room is occupied by a person with confirmed or suspected COVID-19, the CDC, in addition to ensuring sufficient time for enough air changes to remove potentially infectious particles, recommends cleaning and disinfecting environmental surfaces and shared equipment before a room is used by another person otherwise there is significant risk of re-contamination.

30.     Property owned by Plaintiff or others is capable of being contaminated by direct physical contact by an infected person(s) either knowingly or unwittingly. The property owner would be temporarily unable to use such property even though structurally unaltered until such property is sanitized.

31.     Plaintiff's customers come from all over the world and Plaintiff has no reliable way of knowing whether any of its customers were infected by COVID-19.

32.     Plaintiff will incur extra expenses for cleaning and sanitizing its equipment and property.

33.     Pursuant to the Policy, Defendant insured Plaintiff for business income losses and extra expenses.

34. Plaintiff suffered a loss of business income and extra expenses as a direct result of the pandemic, acts of civil authority and other causes beyond its control.

35. Plaintiff submitted a claim to Defendant under the Policy.

36. On March 30, 2020, Defendant denied Plaintiff's claim.

37. Defendant's wrongful denial of coverage breached the Policy.

38. Subject to limitations and exclusions, the Policy insured against all risks of direct physical loss or damage to Plaintiff's property.

39. A pandemic is a type of risk not excluded under the Policy.

40. Defendant's failure to fairly adjust the claim, investigate the loss and cover undisputed damage constitutes bad faith.

## Causes of Action

### COUNT I
### DECLARATORY JUDGMENT

41. Plaintiff adopts and realleges paragraphs 1 through 40, as fully alleged herein.

42. Florida Statute §86.021 creates a right to declaratory judgment when a question of construction or validity arises under a contract.

43. The purpose of a declaratory judgment is to afford relief for a person's insecurity and uncertainty with respect to their rights, status, or other equitable or legal relations.

44. There is a bona fide, actual, present need for a declaratory judgment to determine this matter.

45. Plaintiff asks the Court to affirm that a pandemic is a covered cause of loss not subject to any exclusion under the Policy.

46.     Plaintiff asks the Court to affirm that contamination from COVID-19 constitutes a direct physical loss or damage to property.

47.     Plaintiff asks the Court to affirm that the inability to use property because of the risk of contamination from COVID-19 is tantamount to direct physical loss of that property.

48.     Plaintiff asks the Court to affirm that acts of Civil Authority are tantamount to a direct physical loss or damage to property.

## COUNT II
## BREACH OF INSURANCE CONTRACT

49.     Plaintiff incorporates by reference paragraphs 1-40 above, as if alleged in this Count.

50.     Plaintiff and Defendant entered into a valid and enforceable insurance contract.

51.     Plaintiff gave valuable consideration in the form of premium payments in exchange for the promise of insurance coverage in the event of a loss of business income.

52.     Plaintiff made a claim for loss of business income arising from the pandemic, interruption by civil authority and prohibited ingress to Plaintiff's business.

53.     Defendant breached the insurance contract by denying coverage for Plaintiff's loss, which was due to a covered peril not subject to any exclusion.

54.     Plaintiff complied with its obligations under the insurance contract.

55.     Plaintiff has been injured and suffered financial harm as a result of Defendant's breach of the insurance contract.

## COUNT III
## STATUTORY BAD FAITH CLAIM PURSUANT TO FLA. STAT. SEC. 624.155

56.    Plaintiff adopts and realleges paragraphs 1 through 40, as fully alleged herein.

57.    Pursuant to Fla. Stat. Sec. 624.155, the Plaintiff has a statutory cause of action for bad faith due to the Defendant's general business practice of willful, wanton, immoral, unlawful, malicious and/or deceptive claims handling practices (misconduct collectively referred to as "Bad Faith").

58.    The exhaustively stated basis for which this action is predicated is set forth in the civil remedies notice (CRN) which is attached hereto, incorporated by reference, and identified as **Exhibit "B".** Including its subparts, the CRN comports with the condition precedent set forth under Fla. Stat. Sec. 624.155(3).

59.    The CRN was duly filed with the Florida Department of Financial Services and was served upon Defendant via electronic mail to the Property Claim Supervisor on April 5, 2020.

60.    Per governing law this action is subject to abatement until such time as the sixty (60) day notice requirement for the CRN expires and liability is adjudicated and/or confessed in the Plaintiffs favor as it relates to the claim(s) for relief per Count I of this Complaint.

61.    However, and for the reasons stated in the CRN, Plaintiff is entitled to punitive damages, attorneys' fees, extra-contractual damages, and costs once the referenced conditions have been qualified and the abatement has been lifted. Allstate Ins. Co., v. Lovell, 530 So. 2d 1106 (Fla. 3d DCA 1988); Schimmel v. Aetna Casualty & Sur. Co., 506 2d. 1162 (Fla. 3d DCA 1987).

8

### Prayer for Relief

**WHEREFORE**, Plaintiff respectfully requests that this Court grant Declaratory Judgment for the Plaintiff, declaring that:

A.     A pandemic is a covered cause of loss not subject to any exclusion under the Policy.

B.     Contamination from COVID-19 constitutes a direct physical loss or damage to property.

C.     The inability to use property because of the risk of contamination from COVID-19 is tantamount to direct physical loss of that property.

D.     Acts of Civil Authority are tantamount to a direct physical loss or damage to property.

**WHEREFORE**, Plaintiff requests that after a trial on the merits, the Court award it:

A.  A judgment declaring Defendant in breach of the insurance contract for denying their claim;

B.  A judgment awarding Plaintiff compensatory damages for Defendant's denial of the claim;

C.  A judgment awarding Plaintiff attorney's fees pursuant to Fla. Stat. § 627.428;

D.  A judgment awarding Plaintiff pre-judgment interest pursuant to Fla. Stat. § 627.70131.

E.  A judgment awarding Plaintiff post-judgment interest; and

F.  Such other relief that that Court deems proper.

## **Jury Demand**

Plaintiff demands a jury trial on all issues to which they are so entitled.

Respectfully submitted this 6th day of April 2020.

| /s/ Matthew D. Landau | /s/Thayer A. Musa |
|---|---|
| Matthew D. Landau | Thayer A. Musa, Esq. |
| Fla. Bar. No. 445967 | Fla. Bar. No. 0562211 |
| Eric M. Fischer | LAW OFFICES OF THAYER A. MUSA |
| Fla. Bar. No. 962422 | 9008 SW 152 ST. |
| Paul Kunz | Miami, FL 32157 |
| Fla. Bar. No. 159492 | Office: 305-233-6872 |
| THE LANDAU LAW GROUP, P.A. | Fax: 305-235-6872 |
| 1200 North Federal Highway, Ste. 200 | thayer@musalaw.com |
| Boca Raton, FL 33432 | |
| Phone: (954) 964-0900 | |
| matt@thelandaulawgroup.com | |

*Co-counsel for Plaintiff*

**EXHIBIT "A"**

**[see attached Denial Letter]**

11



PO Box 950, Bala Cynwyd, PA 19004
Phone: 800.765.9749
Fax: 800.685.9238
www.phly.com

Lisa McManus
Property Claims Supervisor
Direct Dial: 916-724-2510
Email: lisa.mcmanus@phly.com

March 30, 2020

Mace Marine, Inc.
Dba: Conch Republic Divers
90800 Overseas Highway #9
Tavernier, FL 33070

Attention: Brenda Mace

RE:             Insured:                  PADI Worldwide Corp. – Mace Marine, Inc.
                Location of Loss:         90800 Overseas Highway #9 Tavernier, FL
                Nature of Loss:           Business Income Loss
                Reported Date of Discovery: 3/21/2020
                Policy Number:            PPK1992912
                Claim Number:             1358908

 Dear Ms. Mace,

The purpose of this letter is to advise that we have completed our investigation into the above captioned claim and unfortunately, The Philadelphia Indemnity Insurance Company will not be able to be of assistance to you regarding this matter.

The Philadelphia Indemnity Insurance Company issued a commercial package policy to PADI Worldwide Corporation under policy number PPK1992912 with effective dates of June 30, 2019 through June 30, 2020. Please reference the above mentioned claim number on any future correspondence to Philadelphia Indemnity Insurance Company.

On March 26, 2020 we received notice from your agent indicating you had to shut down your business due to a Government ordered shutdown as a result of the Coronavirus which has caused a business income loss.

With notice that you sustained a loss, we assigned your loss to examiner Krystal Enbysk who contacted you by phone on March 30, 2020.  You confirmed there was no physical damage to your property and that your business was being closed to avoid the spread of the virus.

---

Philadelphia Indemnity Insurance Company ▪ Maguire Insurance Agency, Inc ▪
Tokio Marine Specialty Insurance Company

Unfortunately, there is no coverage for your business income loss. In order for the business income coverage to be triggered, there must either be direct physical damage to the covered property caused by a Covered Caused of Loss, or there must be a Civil Authority preventing access to your property due to a Covered Cause of Loss off the described premises.

Please refer to your **PROPERTY COVERAGE FORM PI-MANU-1 (01/00)** which reads in part:

PROPERTY COVERAGE FORMS

…

SECTION V - TIME ELEMENT COVERAGE GROSS EARNINGS

This Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Insured Property.

A. ACTUAL LOSS SUSTAINED: In the event the Insured is prevented from producing goods or from continuing its business operations or services and is unable:

1. To make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted), or
2. To continue business operations or services,

all through the use of any property or service owned or controlled by the Insured, or obtainable from other sources, whether the property or service is at an Insured location or through working extra time or overtime at any other substitute location(s), including any other location(s) acquired for the purpose, then the Company shall be liable, subject to all other conditions of this Policy not inconsistent herewith for the actual loss sustained of the following during the Period of Interruption:

1. GROSS EARNINGS less all charges and expenses which do not necessarily continue during the interruption of production or suspension of business operations or services. For the purpose of this coverage, GROSS EARNINGS means:

   a. For manufacturing operations: The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production; or

   b. For mercantile or non-manufacturing operations:   The total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured;

   c. Plus all other earnings derived from the operation of the business.

In determining net sales, in the event of loss hereunder, for mercantile or non-manufacturing operations, any amount recovered under Property Damage policies for loss

or damage to or destruction of merchandise shall be included as though the merchandise had been sold to the Insured's regular customers.

In determining the amount of loss payable under this coverage, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no loss occurred, and to the continuation of only those normal charges and expenses that would have existed had no interruption of production or suspension of business operations or services occurred.

There is no coverage for any portion of the Insured's Ordinary Payroll expense unless a specified number of days for Ordinary Payroll is shown in Section I.E.22. In such case, the Company will pay Ordinary Payroll for that number of days only. Ordinary  Payroll means the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other essential employees.

2. EXPENSE TO REDUCE LOSS: Expenses, over and above normal operating expenses, necessarily incurred by the Insured in making up lost production or in reducing loss otherwise payable under this coverage are covered hereunder, but in no event shall this Company be liable for an amount greater than that for which it would have been liable had the Insured been unable to make up any lost production or to continue any business operations or services.

B. PERIOD OF INTERRUPTION: In determining the amount payable under this coverage, the Period of Interruption shall be:

1.      The period from the time of direct physical loss or damage insured against by this Policy to the time when, with the exercise of due diligence and dispatch, either:

   a.   normal operations resume, or

   b.   physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage,

whichever is less. Such period of time shall not be cut short by the expiration or earlier termination date of the Policy.

…

c.  ADDITIONAL TIME ELEMENT COVERAGES

   1.  EXTRA EXPENSE:  This Policy is extended to cover the loss sustained by the Insured for Extra Expense during the Period of Interruption resulting from direct physical loss

or damage from a Covered Cause of Loss to Insured Property utilized by the Insured.

Extra Expense

…

6. INTERRUPTION BY CIVIL OR MILITARY AUTHORITY: This Policy is extended
to cover the actual loss sustained during the period of time when access to the Insured's real or
personal property is prohibited by an order of civil or military authority, provided that such
order is a direct result of a Covered Cause of Loss to real property not insured hereunder. Such
period of time begins with the effective date of the order of civil or military authority and ends
when the order expires, but no later than the number of days shown in Section I., Subparagraph
E.6. In no event shall the Company pay more than the Sublimit shown in Section I.,
Subparagraph E.6.


7. INGRESS & EGRESS: This Policy is extended to cover the actual loss
sustained during the period of time when ingress to or egress from the Insured's real or
personal property is prohibited as a direct result of a Covered Cause of Loss to real property
not insured hereunder. Such period of time begins on the date that ingress to or egress from
real or personal property is prohibited and ends when ingress or egress is no longer prohibited,
but no later than the number of days shown in Section I., Subparagraph E.17. In no event shall
the Company pay more than the Sublimit shown in Section I., Subparagraph E.17.

…

SECTION VII – CONDITIONS

…

T. SUIT AGAINST COMPANY: No suit, action or proceeding for the recovery of any claim under
this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied
with all the requirements of this Policy, nor unless the same be commenced within twenty four (24)
months next after the date of the loss, provided however, that if under the laws of the jurisdiction in
which the property is located such time limitation is invalid, then any such claims shall be void unless
such action, suit or proceedings is commenced within the shortest limit of time permitted by laws of
such jurisdiction.


Please promptly advise if you believe we have misconstrued any of the facts or circumstances, or if you
are aware of any additional facts or circumstances relating to this matter that may impact our position
herein. Further, in the event legal papers or proceedings are filed or amended, please be sure to forward
same to us so that we may reevaluate.


Nothing in this letter should be construed to waive our rights under the policy(ies) or the law. On the
contrary, to the greatest extent permitted by law, all such rights are expressly reserved, including the
right to disclaim coverage on additional grounds not set forth in this letter. This coverage analysis is not
intended to be exhaustive or exclusive. By mentioning specific grounds that may limit or preclude
coverage, Philadelphia Indemnity Insurance Company does not intend to waive any other grounds which
may currently exist or exist in the future. We specifically reserve all rights whether arising under the

policy(ies), applicable law and / or in equity, including without limitation, the right to supplement this coverage analysis as circumstances warrant.

Having carefully reviewed this matter to conclude that coverage does not apply, we trust your understanding is clear. However, should you disagree with our no coverage position, we request that you notify us <u>in writing</u> of that disagreement along with the reasonable basis for your disagreement, so that we may give this matter prompt reconsideration.

**Additionally, should you have any questions concerning this matter you may contact your Claim Examiner, Krystal Enbysk directly at 916-724-2538.**

Sincerely,

Lisa McManus
Property Claim Supervisor

CC:  Hub International Insurance
    6 Centerpointe Dr #350
    La Palma, CA 9062

# EXHIBIT "B"

**[see attached Civil Remedy Notice]**



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number:      **484160**

Filing Accepted:    **4/4/2020**

> Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | **MACE MARINE, INC.** |
| Street Address: | **90800 OVERSEAS HIGHWAY #9** |
| City, State Zip: | **TAVERNIER, FL  33070** |
| Email Address: | |
| Complainant Type: | **Insured** |

### Insured

| | |
|---|---|
| Name: | **MACE MARINE, INC.** |
| Policy #: | **PPK1992912** |
| Claim #: | **1358908** |

### Attorney

| | |
|---|---|
| Name: | **MATTHEW LANDAU** |
| Street Address: | **1200 N FEDERAL HWY., STE 200** |
| City, State Zip: | **BOCA RATON, FLORIDA  33434** |
| Email Address: | **MATT@THELANDAULAWGROUP.COM** |

### Notice Against

| | |
|---|---|
| Insurer Type: | **Authorized Insurer** |
| Name: | **TOKIO MARINE SPECIALTY INSURANCE COMPANY** |
| Street Address: | |
| City, State Zip: | , |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**LISA MCMANUS**

| | |
|---|---|
| Type of Insurance: | **Commercial Property & Casualty** |

DFS-10-363
Rev. 11/2007



**FLORIDA**
DEPARTMENT OF
**FINANCIAL SERVICES**

## Civil Remedy Notice of Insurer Violations

Filing Number:      **484160**

### Reason for Notice

Reasons for Notice:

**Claim Denial**

**Insufficient claim investigation**

---

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

| | |
|---|---|
| **624.155(1)(b)(1)** | **Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.** |
| **624.155(1)(b)(3)** | **Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.** |
| **626.9541(1)(i)(3)(a)** | **Failing to adopt and implement standards for the proper investigation of claims.** |
| **626.9541(1)(i)(3)(b)** | **Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue.** |
| **626.9541(1)(i)(3)(d)** | **Denying claims without conducting reasonable investigations based upon available information.** |

---

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

**Tokio Marine Specialty Insurance Company Commercial Lines Policy - refer to Property Coverage Form PI-MANU-1 (01/00) Property Coverage Forms, including but not limited to Sections 1 through 8**

---

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

**On March 26, 2020 Complainant filed a claim with its insurance for a covered peril. Insurance company formally denied the claim on March 30, 2020 without conducting any substantive investigation into the claim.  The insurance company did not attempt to inspect the premises, nor did they request any photographs or send out any experts or field adjuster to evaluate the claim.**

### Comments

| User Id | Date Added | Comment |
|---|---|---|
| | | |